Case number 14-5319, Henry, Kellogg, Brown and Root, Inc. and L, Petitioners. Mr. Elwood for the petitioners, Ms. Cohn for the respondent. Case number 14-53919, Henry, Kellogg, Brown and Root, Inc. and L, Petitioners. Okay, let's go. L is the court, John Elwood for Kellogg, Brown and Root. For two main reasons, the district court erred clearly in ordering KBR to produce on waiver grounds documents, the COBC documents that this court previously found to be privileged. First, even if KBR... Can I just suggest that, remember, this is mandamus, right? So for you to prevail, you've got to show that the district court's error was clear and indisputable. Right, and I think that it is clear and indisputable. Okay, that's the case you need to make. Right, for two reasons. Not just that it's wrong. Right. But that it's clearly and indisputably wrong. Absolutely. Okay, go ahead. And first of all, regardless of whether you view KBR's statements as a waiver, and I hope to get to that next, once KBR immediately disavowed the supposedly the allegedly wavering, waiving inference, there was no basis for compelling disclosure of the documents. Is there a case that you can cite for that proposition? I have Sims from the Second Circuit. Koch versus Koch from this court. Were those cases where a privilege had been misused this year? And then they attempted to withdraw it? Well, first of all, we would dispute that there had been a misuse. Well, let's assume we think it was. You went on to this argument, so for this, I assume you went to this argument because you're assuming that the district court was correct on the first one. No, it's only because I think that the error is even clearer here. And since we're talking about clear error, I think this is a real outlier. I would expect you to find a case just exactly in point that says just in these circumstances a court held that this was error. Can you cite one? What's the best case you've got? I think the best case we have are Sims and Koch. Okay, what are the facts of those? Well, in Sims? Yeah. In Sims was the case involving, I mean, where it was allegedly waiving in a deposition, and he later disavowed that. In Koch, there was a case where it was. Was that a very specific case like this one or just a general disavowal? Well, it was a specific disavowal. But, I mean, the court was very clear there that it said that it was inexplicable that once he disavowed it that there was no longer anything left for the other side to have to refute. And as this court said in Koch v. Cox, the point of the at-issue waiver is not to punish counsel. The point is to allow the other side to engage in argument that is based in part on attorney-client privilege material. And we immediately disavowed any such inference. Literally, in the very next pleading after Relator first raised it on February 18th, on February 20th, we said, we are not trying to draw any inference from the contents of the COBC documents. When the court then mused about it. I'm sorry, go ahead. When the court mused about it on March 11th, we said on the very following day in our first mandamus petition, we're not trying to draw that inference at all. So, I mean, we've said at every turn that it's not the inference we're trying to draw. And no court before has, to our knowledge, drawn an inference from a deposition. Now I am going to come in. If you were not trying to establish an inference, why did you do this? This is rather unusual to have gone into this kind of examination, if you're a 36 witness. If you were not trying to establish something from which an inference could be drawn, why did you do it in the first place? Well, the question really concerned two things. The first half of the question, which was separated by 30 pages, all of which winds up as just three dots in the judge's opinion. But the first questioning was to establish that it was, that this was, in fact, attorney-client privilege material. We said we had an obligation to report if we discovered there was reasonable cause. And the point of the investigation was to determine whether we had reasonable cause. And the excerptive part was, isn't it true that after you've had investigations where it's turned up something, you paid the government, you disclosed it. And in those investigations, you did not turn over the reports. And why didn't you? Because they were attorney-client privilege. Skip ahead 30 pages. The second one is to, I think, was legitimately, and that's where he says did you report anything here. And I think that is a legitimately you can ask them that in order to establish that you didn't just ignore these allegations, that you were not willfully blind, that you did something with them. And that you, and I think that the fact that they didn't make a disclosure is relevant. If they had made a disclosure, the other side would want to know that. The other side would want to know what was in the disclosure so they could argue waiver, among other things, if there were privileged materials in it. But beyond that, they're not aware of any other court that has said you can waive in a deposition. We have a county of Erie don't waive in a deposition. Sims says you don't waive in a deposition until you use it. Sims, the counsel, was pro se. Well, that's true. But they said that was further consideration. His pro se status was always only, quote, unquote, further consideration. They said it was inexplicable because they said deposition, you don't waive in a deposition until you try to use that testimony. And here we say we never tried to use it. You know, they cite our footnote in the introduction of our summary judgment motion, which we disavowed any inference about what those documents said, the first occasion we could literally one and two days later. So, I mean, this case, the judge's rulings in this case are outliers at every step in saying you can't disavow. They're outliers in saying that you can waive based on deposition. Are you saying you can't disavow or you're not effective in disavowing? Well, it is that you basically, a party, doesn't have the opportunity to disavow an allegation. It seems that the district court judge said the only way you can disavow is basically if you are going to disavow all your defenses and basically stipulate to a default judgment or something. That's right. That's the way he read Biddeker, but I think that is incorrect. And, I mean, as one of the treatises notes, that for a claim, defense, or argument, that the point is, you know, you disavow that argument and it leaves all the other ones intact. It doesn't mean that you just have to take a default. And that is, I think, another area where this is the first court who's ever held that you've got to, you know, the options are basically, you know, default judgment or going ahead with a waiver that is based in part on a deposition, which, again, is a complete novelty, and on, you know, a footnote and a summary judgment motion that is never cited in the argument section of the brief. So I think that is, I think, the first area that we think is clear error, is the fact that the judge did not list. What about your opposition to the motion to compel? I'm sorry? What about your opposition to the motion to compel? Oh, the motion to compel, I encourage you all to look at it because I am, I'm looking at it right now. You took advantage. Right, because I think it's all leading up to the point which we're saying here. There are two statements in here which were excerpted from the judge's opinion, but we said, you know, KBR in the past made such disclosures, but the reason why we said that is for the next sentence. KBR cooperates in subsequent investigations, but KBR has always maintained a strict policy of refusing to waive privilege over its investigations. When it does disclose facts to government agencies, it always withholds the COVC reports themselves, et cetera. And then you go on to the next thing, which the judge did quote, with respect to the COVC investigation subject to the present motion to compel these practices were followed. Our point of saying this was to say we keep these documents privileged, and even when we make a disclosure, we don't turn that over to the government. We don't turn that over to the government. Were there ground rules established for the deposition of Mr. Heinrich? Heinrich? Heinrich. Because it seemed quite odd to notice a 30B6 deposition, I think it was topic Q, that was all about these investigations, the COVC investigations, when they're all privileged. So what was the purpose of the deposition in the first place? I'm sorry, I'm not meaning to interrupt you, but the other side noticed that question, and I think they wanted to see what they could get out of them. And when we asked our questions, it was literally to establish the factual predicate for asserting attorney over those documents because this was all ongoing at the same time. Their motion to compel was filed right around the time that we deposed Heinrich and then later filed our motion for summary judgment. So that was the point of much of the questioning was just to establish that this was a legal inquiry that we had lawyers overseeing and that we were trying to get to the bottom of this so we could provide legal advice from the in-house lawyers about whether to turn anything over to the government. Thank you. Let me see here. As far as I think that this is a broad and unsettling rule for a couple of reasons. As I've already indicated, it is a novel rule. It is novel in the sense that all of the judgments, all of the components of the opinion under review are novel. And the court in Mohawk, the Supreme Court in Mohawk, said that novel decisions are one of the areas where mandamus remains available. And I think it is really unsettling for three reasons. First of all, in the disavowal because there are a lot of defenses where, as one of the treatises says, the at-issue waiver is the most dangerous privilege principle because you don't necessarily know when you're going to stumble into it. Under SAIC, for example, the fact that you have a compliance program in place is relevant to mens rea. So if you want to establish that you have a compliance program in place to introduce later, you get that evidence out there in the deposition, and they say it's not that far to trip into under the judge's opinion a waiver, which under his lights is something you can't disavow. And those are two things that I think are incredibly damaging as the amicus brief that was lodged with this court attempted to outline. In addition to that, there is the second order, the December 17th, the second order from that day, which was another outlier, in that it said that basically communications from assistants, rather investigators working on behalf of attorneys, were not privileged unless they were reporting communications from so-called real witnesses, you know, recipient witnesses, which is, again, another outlier and another thing that the broad coalition of amici said that it was unsettling to their use of investigators. There's one last thing that I really think it's important to address, and that is that justice must satisfy the appearance of justice, and we think that there is really a compelling case from the course of conduct here that the judge, you know, an impartial observer could say that he has abandoned his mantle as an impartial arbiter of arguments made by the parties, and he's become an inquisitor himself. There are, I mean, the last rounds of briefing were all not things that were raised by the other side, but were raised by the judge. For example, on remand from this court where the court held these documents were privileged, he said maybe they're not privileged on a different ground, a ground of his own devising. Maybe they were waived. He came up with his own ground of waiver involving the failure to give the government a privilege law. And finally... You're well over time, so finish your sentence. And in addition to that, the judge, who was supposed to be protecting us from prejudice, disclosed block quoted from privileged documents in two orders since the remand, including one order that began by noting that we were likely to appeal. Okay. So for that reason, we asked that the judge be granted. Okay. Thank you. Good morning, Your Honors, if it may please the Court. I'd like to first quickly address two issues that were raised here. First, with respect to disavowal, what is critical about the cases is that the disavowal is all viewed at the intent at the time the issue giving rise to the waiver occurred. And in Sims, the Court of Appeals said it was clear that there was no intent on the part of Sims when he was deposed to waive his privilege. And in... Here's my question to you, is why was this topic even designated by you in your 30B6 deposition of Mr. Heinrich? Why is it a relevant and proper scope of inquiry to ask him questions about an investigation that is covered by attorney-client work product privilege? Well, the most important reason is that we filed our interrogatory response. Interrogatory response, one, asked KBR to identify all the witnesses, provide us the contact information, and give us a summary of what you know that these witnesses had to say. We got nothing back in response. We didn't even get contact information. All we got was a list of names. And so we did our 30B6 notice of deposition with a lot of topics. KBR chose who to produce. We had no clue they were going to produce their attorney. Well, one of your topics is the investigation, so who would they produce other than the attorney who supervised the investigation? Well, if they wanted to produce someone who wouldn't waive the privilege, then they wouldn't produce their attorney. Well, anyone talking about it could presumably waive the privilege. Then you could say we can't talk about it. And they did. That's the whole thing. So you can notice a deposition on a topic that's clearly privileged, and if they produce someone, then that's kind of tough? Well, that is true, but that's not what was happening here. What was happening here is we were in a search for information. Yes, there was this one topic that we noticed. However, KBR was very clear, and in the first half of the deposition during all my questioning, we got nothing and there was no basis for waiver. That's the end of the ball game. We were ready to go home. Well, let me ask you this.  Every day in a courtroom somewhere in America, the following type of questioning happens. A police officer says, I had a 911 call that there was a fight in a bar, two guys involved in a fight. I go to the bar. I talk to the officers who were there already investigating. Based on that, I direct them to arrest the defendant. The other guy wasn't arrested. Something like that happens every day. Any hearsay objections to that testimony would be overruled because the court would say that him just talking about the fact that he spoke to people who investigated and then made a determination that this guy would be arrested is not hearsay. Okay. And to the extent that there's any prejudice, it's minimal, because we'll hear from the witnesses who saw what happened. So if that's the way that it works, how is this some sort of major damning inference for you that this guy testifies that we did investigations. In some investigations, we make reports and we give refunds, et cetera. We did an investigation here and we didn't. How is that unlike what happens in court every day and that's not seen as any big deal at all? How is this some big waiver? Very good question. The answer is that in this case, the central focus of KBR's claim was that Barker was an amateur auditor and he didn't know what he was doing. We, KBR, are the professionals. We did the big professional audit and we found that there was absolutely nothing. And the district court made a determination. I read the summary judgment brief and they don't make that argument at all. Excuse me? They don't make that argument in their summary judgment brief. Yes, they do. Their arguments are all about the contracts were properly procured, et cetera, et cetera. They don't rely upon Heinrich's statement to prove any point of their arguments. If they do, I want you to show it to me. Right. There's two issues of waiver that go on. First, the waiver that occurs at the deposition is far different than what happens when you file a motion for a summary judgment. In the deposition, you look at that independently. What did he waive? What did he waive? What product did he reveal? His ultimate conclusion that they were in compliance with their contract was necessarily and undeniably linked to his review of the COBC reports. They called him. They said, did you review the COBC reports? Why did you review them? He answered, I reviewed them with a specific purpose of determining whether a violation occurred. Then he was asked, did you violate your COBC obligations? He said, no. That wasn't the question. Yes, it was. The question is specifically. Those happen 30 pages apart. No, on page 127. This is right where it is. Yeah, they asked him, there's a regulation that requires you to report fraud, et cetera, et cetera, et cetera. Did you follow it here? Yes. What is he supposed to say? No, I didn't follow the regulation. We never report fraud. These are not questions for me, so I'm not sure what he's supposed to say. But I can tell you this. He was specifically asked, why did you review these reports? And he said, to make a determination. And then he was asked specifically what his ultimate determination was, and he gave it. His ultimate determination necessarily and definitively was based on his review of the COB report. Okay, so how is that any different than the sergeant who says, I showed up at the scene, spoke to the officers, and I told them to arrest the defendant and let the other guy go? Because the sergeant isn't in, because the party there isn't claiming attorney-client privilege and waiver. That's the difference. The difference as far as whether that testimony is hearsay or not, the court says that that's not even offered for the truth. So why should I conclude that him testifying about, yeah, I did a report, all of a sudden injects the report into his testimony as if it's being submitted for the truth? Because White instructs that actual testimony from an attorney on the subject matter of the representation results in the application of the strict waiver doctrine. That's the answer. So if he testifies about the subject of the representation, so as soon as he started testifying that he conducted investigations, he's waived under White? Yes. That's really your answer? I didn't think that was your answer. If that's your answer, you know. You've got a problem if that's your answer. No, when he gave his ultimate testimony, that's when the clear and definitive waiver occurs. What page is this ultimate testimony in the JA? He gives his ultimate testimony on 120, 132. Did KVR adhere to that contract clause? Answer, yes, we did. And, again, on. . . Is that the waiver? That is a specific waiver, yes, because he's giving his ultimate conclusion. He just said they complied with the contract. Right, because he's giving his ultimate conclusion that necessarily definitively was based on his review of the COB report because he also testified that he was the decision-maker-in-chief for KVR to make that determination, so you can't separate the two. And then he was specifically asked on 162, with respect to the matters that we have testified about and that are identified in the privilege log, which are the COBC reports, did KVR make a disclosure to the Department of Defense, Inspector General, that there was reasonable grounds to believe that a kickback had been paid or received? The answer is no. It was his specific duty. He was a vice president. So let me ask you this question. Is KVR allowed to have any corporate representative testify that they did not commit fraud with respect to these allegations? Those are two separate issues. Answer that question. I will. If you get a witness who can testify who has not reviewed the COBC reports, of course, because then you're not waiving it. So the witness who testifies without reviewing the investigation and says, we didn't commit fraud, how are they competent to testify about it? Because they do what the COBC witness is supposed to do, is you go review all the facts and put everything together and provide your basis for why that is true. Aren't the facts in the investigation? The facts of an investigation outside the privilege one. You can rely on the privilege one its way. So they have to do a new investigation to be competent to testify about it. They can't use the other, the previous investigation. They can't use a witness based on that? Because if that witness reviewed that report prior to testimony, I think you have a problem that they may have opened the door to require the production of the report just on that basis alone. But having the attorney who specifically had the legal obligation in the company to review the report, made the determination, and then have the KBR submit a material false representation to the district court on that very subject matter, is such an extreme case of waiver that I believe that the standards can't be met. The waiver did not occur when the deposition was taken? It did occur sometime later? No, it happened at the deposition itself. Even before any use had been made of the testimony? Absolutely. Right. What about the disavowal? The disavowal is, first, all the cases identify that you look at the disavowal at the time the statement is made. And at the time the statement was made, KBR intended to use that testimony. They've scripted it. I don't know what they intended. Because it was pre-scripted. This can't be based on intent. What? There's no way to know what they intended. Well, no. But they made a disavowal. Now, is it a proposition that it's untimely or that it's ineffective for some other reason? I think there's two issues. One, who's the party who injected the waiver issue? In this case, it was the deposition testimony of KBR's counsel that resulted in the waiver of the ---- Now, that doesn't seem to me to be answering the question I thought I asked you. Is it your position that the disavowal was untimely or that it's ineffective for some other reason? The disavowal was untimely, ineffective because the waiver had already occurred. How soon after the deposition did they make the disavowal? I'm sorry? How soon after the deposition did they make the disavowal? The time frame doesn't matter. You just said it was untimely. If it's untimely, then the time frame does matter. Okay. Then let me clarify. Once the waiver happens, once the words are said, you can't go back and tell the court reporter to erase them out of the transcript. It was untimely at the moment they were said is what I was trying to say. Couldn't they just ---- So you're saying there is no such thing as a disavowal? If that's ---- Once the words are said, either they can be disavowed or they can't. I think if you look at your case in Ideal Electric, what you had was a waiver of the privilege, and this court said if you want to ---- we're going to apply a strict waiver test on implied waiver, and if you want to withdraw the information, you have to dismiss the claim in the entirety. So there is ---- if you want to proceed to either dismiss the claim or in the entirety, there is no disavowal. Once the waiver occurs ---- That's what Ideal Electric stands for. No, because there's a different standard before an attorney testifies when a defendant testifies. And White makes that very clear. And you can go up and say, you know, I'm innocent. That's not a waiver. What is a waiver is when you say, I'm innocent because I'm the attorney. I conducted an investigation. I conducted a review. I read it. I studied it. And I made an informed decision that there was no waiver. But if you had more than one defense and the attorney-client information, protected information, goes to only one defense, why would you have to disavow your entire defense as opposed to simply at most disavowing the defense as to which the attorney-client was working? Because it's issue injection. You have to ---- And the issue that was injected was whether kickbacks were paid, essentially. So if they have to ---- No, that issue was already there where the kickbacks were paid. So that's the subject matter of the testimony, that there was no well-founded evidence that kickbacks were paid. And as a result of that, we are entitled to an inference if they want to withdraw that testimony and they want to not engage in waiver, then we're entitled to that inference that kickbacks were paid. We move over to the damages issue. So if a document is inadvertently produced that's covered by the attorney-client privilege, to claw it back, disavow under your theory, that has to be done immediately or it's lost forever? My recollection of the case law in this circuit is if you inadvertently disclose, it's your tough luck. Okay, and so you waive all your defenses to ---- No, you look at what is the subject matter of the waiver, and that is what you have waived. The subject matter of this waiver was kickbacks. That's what they waived. They can't now come back and say we didn't ---- Wasn't the subject matter of this waiver whether he made a determination to make a report based on reviewing a report, to make a report of fraud based on reviewing the investigation? No. The subject matter of his testimony was that we complied and there was no violation. That's the subject matter of his testimony. That's his ultimate conclusion that he gave. They did not violate the contract. You have ---- And who, again, can testify to that competently? Who? The other 30B6 witnesses that we've since deposed. They didn't review the COBC report. And you would say that they would be adequately prepared to testify under 30B6 without reviewing the COBC report? They could just come in and say, you know, best to my knowledge, from what I've heard, we complied with everything, and if we knew about fraud, we reported it. They could say that based on third-hand information. The question is waiver. And what you're asking now is a different ---- No, the question is what I just asked you. Okay. If a new ---- if a fresh new witness is appearing for the first time and I ask them if they reviewed the COBC report in preparation for their deposition, I would ask the district court if we'd like to review the report so I can effectively cross again to the witness. I don't know what the answer to that is because that issue is not before us. But that would be my first objection and request to the district court. I think that from my general recollection, if you use a document to prepare the witness, I think the other side is entitled to that document. I think that, you know, the attorneys are entitled to use that document to prepare the witness. You're just not entitled to show that document to the witness during the preparation. And there's a big difference there. One's being used for work product and attorney client privilege, and the other is being used for a testimonial purpose. So it would be fine if Mr. Heinrich testified. I never actually read the report. I just had somebody dictate it to me, and I used it to prepare. And I'm convinced after having that been told to me that there was nothing in the investigation that showed that there was any fraud. That would be fine? If Heinrich testified that he never reviewed the report, yes, it would be fine. However, on page 11, he admits to having reviewed the original reports back in 2003 and 2004. So there's no question that I reviewed them. And he admits in his deposition that he reviewed them again. So it all turns on the fact that he reviewed them personally rather than somebody, you know, giving him a summary? Someone just preparing him for his deposition. Yes, because he was the decision maker for KBR. He was their chief legal counsel on the issue, and he testified on the core requirement. So KBR's mistake here is that they produced somebody who had firsthand knowledge of the investigation. They should have produced somebody with second- or third-hand knowledge. Absolutely. That was a critical mistake, and they elicited explicit testimony. And that's the way 30b-6 depositions are supposed to happen? You produce the least knowledgeable person to testify about the topic?  And understand that all of these, the entire waiver issue and all these questions have nothing to do with anything that Mr. Barco did. We've asked our questions. We didn't have a case to move forward on at that point. KBR's counsel stood up and, with a prepared set of questions, delved into his prior review of the COBOCB, the reports, looked at the and asked him did he make a prior determination, and he said yes, and asked him what his ultimate conclusion is as of today, and he gave that one as well. He testified on the core substance of the privileged material. Not on a tangential issue, but on the core, on the whole body of the entire confidential communication. From beginning to end, in order for him to give his ultimate conclusion, it was based on the entire document. And because he had first-hand knowledge, acknowledged to reading it beforehand, acknowledged to reading it in preparation of his deposition, and acknowledged... Tell me again why you noticed the deposition, this deposition topic. What was your purpose? We wanted to, one, if someone had knowledge of the investigative report, we didn't have the names of the people who had even been investigated. We didn't have the subject matter. This was just a preliminary deposition to try to get to first base. If we had gotten to that, we would have moved on to substantive depositions of individuals. But we were still out of... We were stymied, and the judge noted that in his decisions that our discovery efforts were stymied. So you noticed this topic so that they would tell you what they investigated and who they talked to? That's what you expected to get out of this? To get as much unprivileged information as we possibly could. That's the purpose of that question. Not to get privileged. We knew going in, I mean, there was a lot of dialogue between counsel. What did you think was unprivileged information that you would be entitled to about the investigation? At that point in time, we understood that the information individual people knew about the subjects that were about the contract, who had read the contract documents. But instead, they produced a witness who had no first-hand knowledge other than his knowledge of the COBC report. So he couldn't sit and say, well, I... You noticed that the topic, the topic that you noticed, I think it was Q, reads as follows. Any investigation or inquiry, internal or external, formal or informal, of Mr. Gerlach, DNP, or any of the matters identified in topics A through O above. The scope shall include knowledge of everyone who participated in the investigation. That was the topic that I presume you or somebody working with you drafted. Yes. So tell me what non-privileged information you believe that you were entitled to seek based on that topic that you propounded. One, there was another investigation conducted by Penny Babble as part of the human resources that we knew about, that there was documents produced in Discovery. And I was under the impression that that was part of a formal investigation outside the COBC. And so that was an important area of inquiry in trying to figure out... So when you said any investigation or inquiry, you meant something other than the COBC investigation? No, I meant I wanted someone to be produced with knowledge of all the investigations that... Including the COBC investigation, right? Yes. Since it's any investigation. Exactly. So you propounded an interrogatory seeking information about the COBC investigation that you knew was done by counsel, right? It was broad enough to include the COBC investigation, but it was to include all investigations. And at that point in time, a determination of whether the COBC investigation was privileged or not had not been determined. So it's... So your theory is that at that point, defense counsel should have asserted the privilege at that point? Exactly. And they did to all our questions. And we were shut down. If defense counsel sat down and never asked a question, we wouldn't be here today. So the only reason we're here today is because defense counsel opened the door, not only opened the door, elicited explicit testimony from their attorney that they intended to use in their summary judgment. Now, what about the explicit execution? But what he really testified to is, with regard to this relative case, we conducted an investigation and we didn't report anything. Did he really say anything more than that? Yes. He said why the investigation was conducted and that he... How do you know that? I mean, that's not privilege. That he made a determination, that he made a determination that they didn't have to make a report. And that determination was necessary legal advice. That goes back to what I first asked you. Did he just say, we had the investigation and we didn't report, didn't make any... I made the determination that we did not have to report it. He said me. So that's a waiver if the attorney is not present. When the attorney says, I made a determination on behalf of the company that we didn't have to investigate it, that's a waiver. And remember... At the same time that he testifies, we never make those reports themselves available to the government because they're privileged. Right? Because that's part of his testimony, too. Yes. And that's why he should not be talking about the COBC report. Because, in other words, when they talk to the government, they don't mention the COBC. They say, we wanted to make a disclosure. Here, they said the COBC... So the government didn't know that they had a COBC program, that they had a compliance program? The government did not know they conducted a COBC investigation with respect to the contracts in this case, even though that they did file a subpoena on that one. But the government never knew. And, you know, I think... You know, White gets pretty clear and says actual testimony from an attorney, which is unquestionably what we have here, on the subject matter of the representation. His explicit subject matter of the representation was whether or not KBR was required to make a disclosure under the anti-kickback statute. And he testified on that specific subject matter and gave his ultimate conclusion on that subject matter. I don't... You know, what you're saying is the only thing he didn't give were the facts that we wanted originally. And so the only thing we wanted in the deposition was someone who could actually give us the underlying facts. So they produce a witness incapable of giving us the underlying facts, which they claim attorney-client privilege. And the only thing they give is their privileged communication from this witness to the company saying, I've reviewed all the facts and there's no reason to report. No more questions. Let me ask you about the disavowal. So if... I understand your point about determining at the moment that it happened. But just from a policy point of view, if... As I understand their disavowal, if the disavowal means that the defendant can't rely on these reports or the attorney's conclusions about what the report said or the fact that they would normally report to the government if they found a problem, but in this case they didn't, if they can't rely on any of that, what's the harm to you? Well... Doesn't that put you back where you would have been before, according to you, the privilege was abused? First on the strict waiver standards... Don't give me the strict... Okay. I understand that. I know what the cases say. All right. I'm just asking from a policy point of view to get this right. Okay. What's the harm to you if this avowal puts you back to where you would have been prior to this deposition? Because the first line of attack during our case in chief would be KBR. Did you submit a false representation on your COBC investigation because you wanted to mislead this jury? I mean... Wait a minute. I'm sorry. When would you say that? Let me rephrase that. A key area of cross-examination is going to be that KBR submitted a material false representation in an attempt to mislead the facts...  ...concerning whether true evidence existed as to whether kickbacks had been paid. And we would ask the jury to draw an inference from that that they lacked credibility. And in order to adequately cover that round of inquiry, we need to know... And if we have... If the report is produced, we can go to, you know, the specific examples and say, look, this said this one X, Y, and Z. That's not the question, though. Okay. You're answering the question of how our case would be better if we got the report. The question was, if the waiver was disavowed, how are you any worse off than you were than... Than if it had never happened. Yeah, than if it had never happened. Heinrich had never testified to any of this. We're worse off because there's specific factual inferences that we can draw from his testimony. Well, no, no, no, no. You have to assume... My question assumes that he never testified about this. If he never testified, there would be no waiver, so there... Exactly. However, he did testify. And so you can't just... It's the fact that he testified that results in the waiver. I mean, you might have said to me, well, look, you've got to do this. You can't allow disavowal because that allows defendants to try this, and if they fail, they can then disavow. And if you really want to protect the privilege, you need to say, look, if you try something like this, you lose the privilege. Okay, I could have understood that. Yeah, I think that is a key argument we make in our brief. So it's an incentive, right? That's... Well, that's the whole... It's a... When I keep on raising strict waiver, what I'm really referring to is this Court's mindset of the not wanting to allow, to use this privilege process as a way to... I got you. Strict waiver is a bit... But this particular situation where... Let's assume you're right, that there was a complete abuse of the privilege here. Let's just assume for purposes of my question. Total abuse of the privilege. Completely inconsistent with all of our case law. My simple question is, what's the harm? Setting aside the incentive arguments you and I were just talking about, trying to take away any incentive to misuse the privilege. If they disavow it and can't make this argument at all, what's the harm to the plaintiff? Well, I already... Other than the fact that you have lost... You may have lost a great opportunity to cross-examine them and talk to the jury about this document. If you go back to where you were at the beginning, prior to the testimony, what's the harm? In every waiver situation, if you go back to the beginning, before the waiver occurred, there is no harm. And so you can't have a blanket disavow standard. What you look at is Sims, the leading case we're looking at, disavow. And there was five factors they looked at. Sims never injected the issue of his emotional state. They injected the issue of either testimony. The risk that some independent decision-maker will accept the privilege holder's representations. They got a false inference in front of the judge. The third factor was the testimony given in the absence of counsel. No, the testimony was given by counsel in this case. The fourth was the issue giving rise to the waiver introduced by the non-waiving party. Yes, KVR, after we were shut down with our questioning, KVR introduced the evidence. And fifth, the waiving party attempt to use a privilege as both a sword and a shield. And the answer, again, is yes. So of the five factors that are the core evaluation under Sims, every last one of them goes in our favor. So the question is, did the court abuse its discretion in deciding that disavow was not appropriate in this case? And we say no. Let me just ask you that. I know you've been asked the same thing over and over. You're not doing a real good job of directly answering, so I don't feel too guilty. What is your best case from this circuit for the strict waiver proposition? The strict waiver is every case. No, no, no, no, no, no. It can't be every case if I'm asking you for your best case. All right. Well, all right. You're not really doing a very good job of directly answering what we're asking. Okay. The best case is White. And I deal in that case. What's the language from White? White says actual testimony from attorney on the subject matter of the representation. That's not a complete sentence. No, no. I'm sure they have that phrase in there, actual testimony from an attorney on the subject matter. Actual testimony from an attorney. You need a complete sentence. I'd have to pull out the case and read it. It's in our brief. I hope you've read it. I've read it multiple times. And in my more lengthy notes, I have the full sentence. I don't think the phrase strict waiver appears in White. No. It cites to Perryman and White's sealed case. What's the best case in this circuit for strict waiver? There is what you look at ideal electric. And ideal electric applies. There's only one line of holdings in this circuit. If a waiver occurs, it's final. There is not a single decision that says if a waiver is identified, that it's not final. Do we have one that expressly says you can't disavow? No. There's no decision that says that you can't expressly disavow. Why don't I read the whole sentence that you were paraphrasing from White? Okay. It's at 887F2 at page 271. It says, however, pretrial disclosures have been found to waive the privilege only where a defendant disclosed the substance of privileged documents or permitted actual testimony by his attorney before an investigative body. Is that the sentence you were paraphrasing? And the second sentence after that. Here, in contrast, White never released any substantive information about his attorney's review of the arrangement with Fanati and did not refer to any particular instance of review. Right. So the two specific things are actual testimony from the attorney, not refer to any particular instance of review. You've got actual testimony from the attorney in this case, and Heiner specifically testified about the particular instance of review. It's not just actual testimony. In that case, you're talking about by an attorney before an investigative body where he's disclosing the substance. This is an investigative member. In White, it's criminal and it's an early-on investigation. So this is much closer to the trial phase, so it's even much more imperative in this case. And this isn't a deposition. There wasn't even a transcript of the other event. So this is much more on an investigation. And we were conducting an investigation, and we do sit in the shoes of the government, and we were conducting that investigation on behalf of the government as well. So there was an investigative nature associated with the False Claims Act litigation to begin with, and there's no doubt that he referred to a particular instance of review and testified that it was his responsibility within the company to provide the ultimate answer as to whether a report had to be made. In this case, not only do you have the testimony of what boils down to the witness itself, Heinrich, who is representing the company, but the testimony of the attorney himself. Let me ask you a question. Here's my concern. And perhaps my former life as somebody who used to do these types of investigations influences my concern. If you're going to have a compliance program within a company, somebody has to administer it. Most companies have their lawyers administer it. If the lawyers administer the program and oversee the investigations, I think you would concede, based on the prior mandamus case in Upjohn, that that's work product privilege. So if the company that maintains a compliance program has to post somebody to testify, the 30B6 deposition or at trial, about the fact that they have a compliance program, and that pursuant to that compliance program they investigate some things, they don't investigate other things, and based on those investigations they report some things to the government and other things that they don't report, who can testify about it other than the lawyer? Any other employee of the company? A 30B6 witness can testify about anything. I mean, you don't have to have first-hand knowledge to be a 30B6 witness. Okay, so if anybody else testifies about it and they review the reports, et cetera, then there's no waiver of a privilege? No. Well, let's look at it this way. In White, if White testified, I read the report my lawyer prepared and it exonerated me of wrongdoing, he waived the privilege, right? And so if you get KBR's attorney to say, I read the report that was produced for me intentionally for my purpose to decide whether a violation has occurred, and based on that report I've determined there was no violation, that's a waiver of the privilege. So the distinction in your mind then is Judge Wilkins' specific question to you was that if a company has a compliance program that's managed by its attorney and that attorney testifies that we have a compliance program, we report in some cases and not in other cases, that wouldn't be a waiver, right? There's a whole line of waiver injections. It would be a waiver under the Cox waiver injection. I thought your point here was that they went beyond that and that he testified not just that they had a program, but that they report instances to the government where they find a violation. They don't report when they find no violation. Here they did a study and they didn't report. I thought that's what your point was. That is my point, Your Honor. Yes. Absolutely. Because that's the core, and he makes that referencing back to the privilege law. So to you then the key point here is that the lawyer stated in his deposition that after doing an investigation he found no violation, and then they moved for summary judgment based on that, right? Correct. That's your case. That is our case. That's our best case. I'm sorry to prolong. Go ahead. This is redundant. Can you give me one sentence that explains what you mean by strict waiver? What do I mean by what? Strict waiver. You keep telling us there's a strict waiver doctrine in this circuit. You keep telling me where it is in this circuit. Okay. Can you give me one sentence that tells me what the doctrine is yourself? Strict waiver is used in Levin, and what you have is Biddeker talks about express waiver. Are you getting anywhere close to telling me what strict waiver is in your phrase? Yes, and strict waiver in my phrase is in order to protect the crown jewels, if you open any little door that gives an inkling of what's behind in the safe, you've waived. That's strict waiver. Thank you. Thank you. So I think Mr. Elvin is out of time. You can have three minutes, if you'd like it. I think one point came out between the questioning by Judge Wilkins and Sentell and the comment by my brother, Mr. Cohen, where he asserted that we injected the issue. And I think it's important to keep in mind that each of the statements that Mr. Heinrich made were nonprivileged statements, and that, indeed, each of them was about a fact that the other side elicited first. I'll give you the record sites. It's PETA page A131 and page A235. Those are just the ones specifically talking about whether a report was made to the government afterwards. And to clarify, Mr. Heinrich never testified that I did the examination here, and I concluded there was nothing, so that's what we reported. All he said was, you know, we had an investigation. No report was made. But he did testify that under company practice, when they do an investigation and they find a problem, they report it. And when they don't find a problem, they don't. And in this case, they didn't. And those two facts were separated by 30 pages. The first fact that they did. But they were put together in your motion for summary judgment and your opposition to. They were put together. Well, they were put together in opposition in order to make the point that even when we find something, we don't turn over these documents. We didn't try to make any sort of inference there about what the conclusion is. Well, you go ahead with your point. I interrupted you. You go ahead with your point. But in any event, I think the important thing to remember out of all of this is that these are awfully fine points to enforce in a deposition, that, you know, if somebody said, aha, he could have gone up to this point without waiving it, but because he asked that one additional question and the way he asked it, that was a waiver. And that has never been held before. And that is why there's always been the principle that you can disavow something when somebody points it out. You don't have to disavow it at the moment you say it. You can disavow it when somebody else brings it up. But in this case, it was used in the later motions. Well, again, I disagree that it was used in the opposition to the motion. All we were saying there was that even when we have something to disclose, we don't turn over these documents because they're privileged. And it was, again, only used in the introduction in a footnote. I would hate to stand up here and rely on something that I only raised in the introduction in a footnote. But I think that this shows the kind of harm of the pinprick waiver theory because we are here a year later still arguing about waiver, whereas under the general principle that you can disavow, this case would have ended on February 20th, 2014, which is the day when we said we're not trying to draw any inference from the COBC documents. And you can just forget about that. And I think with that, I will wrap it up, except to say that it was the spawn treat as it says, that this is the most dangerous principle to add issue waiver for the reason we outlined here. I mean, if it's that line, spawn, S-P-A-H-N, which refers to it as the most dangerous privilege principle because it's not always that clear when you're about to step over. And it is unsettling to the law, as pointed out by Amiki, that we have both a withdrawal of the traditional rule that you can disavow and the idea, as pointed out in the county of Erie and the Sims case and the Gardner case, that depositions aren't really a place where a waiver was made. As the Sims case said, deposition testimony in a civil action might never come to the attention of the decision maker, which is why it doesn't result in a waiver. And if there are no further questions, thank you. Okay, thank you both. Case is submitted.
judges: Tatel, Wilkins, Sentelle